Millard L. Midonick, S.
In this accounting proceeding the court is requested to construe article fifteenth of the will and to determine whether the trustees are permitted to make investments as provided by the "prudent man” rule (EPTL 11-2.2, subd [a], par [1]) without the necessity of obtaining written consents of the adult income beneficiaries of the separate trusts under article ninth of the will.
The first paragraph of article fifteenth provides: "I hereby give my Trustees, acting under this will, full power and authority, in their discretion, to hold and retain any property coming to them under this Will in the same form of investment as that in which they may receive it from my Executors, although it may not be of the character of investments now permitted by law to Trustees. I also give my said Trustees full power and authority, in their discretion, to sell, lease, improve, exchange or partition the whole or any part of such property, whether real or personal, and to invest and reinvést the proceeds in such amounts as they may see fit, in real estate in the State of New York, or elsewhere; or in Bonds of any State or Government, within or without the United States; or in Bonds, Notes or other obligations secured by Mortgages on real estate within or without the State of New York; or in First Mortgage Bonds or First Consolidated Mortgage Bonds, or other Mortgage Bonds having a lien prior to the first Consolidated Mortgage Bonds, of such railroad companies in any part of the United States as, at the time of such investment, are in good credit and standing; or, with the written consent of any adult beneficiary for whose benefit any trust funds are held, in corporate or other Stocks or Securities or other personal property of any kind or description, al *749 though the same may not be of the character permitted for trustees’ investments by the ordinary rules of law.” This court has construed the investment provision of article fifteenth on two occasions. By decree dated August 3, 1945, Surrogate Delehanty construed that article as follows: "1. The person or persons from time to time acting as Trustee or Trustees of any trust are authorized and empowered in their discretion to invest and reinvest, without the consent of any person in (a) any securities or other property which shall be investments legal for trustees under the laws of the State of New York, including the obligations and securities of any municipality or other subdivision of any state or government, and (b) the obligations and securities of any state or government, wherever situated, but such trustees are not authorized to invest in the obligations or securities of municipalities and other subdivision^ of a state or government for the payment of which securities or obligations the credit of such state or government as a whole is not pledged, except with the consent of the adult beneficiary or beneficiaries then entitled to receive the income of said trust, or portions thereof in which such investment is proposed to be made.”
By decree dated November 13, 1951, Surrogate Collins construed article fifteenth to require the written consents only of the adult income beneficiaries of the separate trusts in which a particular investment within the guidelines of the 1945 decree was to be made.
It would appear that the decree of this court dated August 3, 1945 actually settled the question of the authority of the trustees to invest without necessity of written consents, because it explicitly said that they could invest in any security or other property which shall be investments legal for trustees under the law of New York without the consent of the beneficiaries. However, the parties have requested a construction in light of the amendments to the law after that date, and the court will address itself to that issue.
Before the revision of section 21 of the Personal Property Law in 1950 and at the time of the execution of this will and of the 1945 decree, the two general classifications of trust investments were "legáis” (fixed income obligations authorized by statute) and "nonlegals” (all investments unauthorized by statute but permitted to trustees if authorized by the terms of the trust instrument) (Matter of Moser, 58 Misc 2d 742). This statute, originating in 1897 (L 1897, ch 417, § 9) was substan *750 tially revised in 1950 (L 1950, ch 464, § 1) to authorize the use of trust funds for the purchase of securities that are not of the fixed income type, but only to the extent of 35% of the value of the trust fund when the investment was made. A further amendment in 1965 (L 1965, ch 901) increased the permissible investment in "nonlegals” from 35% to 50%. In 1970 EPTL 11-2.2 (subd [a], par [1]) was amended (L 1970, ch 321). It eliminated the specified "legal list” of investments and provided the so-called "prudent man” rule for investment. This section was further amended in 1972 (L 1972, ch 379) making this section applicable to any investment made on or after May 1, 1970 and to all estates and trusts in existence at the time the section became effective. The investment rule contained in this new section only applies where the controlling will does not provide otherwise.
The petitioners and the guardian ad litem appointed for infant remaindermen contend that the proper construction of article fifteenth is that it permits investments by the trustees in accord with the "prudent man” rule of EPTL 11-2.2 (subd [a], par [1]), the law applicable for present investments, and that the consent of the adult income beneficiaries is no longer necessary. Respondent Calvin W. Stillman, an income beneficiary of one of the trusts under article ninth, contends that the decedent intended that the income beneficiaries should participate in investment in common stock and other securities regardless of any change in the law.
The obligation of the trustees respecting investment of trust funds is fixed by the law which is effective at the time of the investment, unless specific directions are found in the will which unalterably prescribe the investment to be made. (Matter of Hamersley, 152 Misc 903; Matter of Berg, 64 Misc 2d 197.) Where the instrument is silent or contains only permissive language with respect to investments, the statutory authorization in existence at the time of any particular investment will control. (City Bank Farmers Trust Co. v Evans, 255 App Div 135; Matter of Berg, supra; Matter of Hamersley, supra.)
In Matter of Hamersley (supra, p 904), the decedent, in paragraph thirteenth of his will, authorized the executors, the trust company or other institution executing the trusts to continue any investment which he made or which existed at his death and further authorized them to invest in bonds or stocks of certain specific companies and governmental agen *751 cies "which may be approved by my executors for the time being.” He further provided (p 904) in the last sentence of that paragraph that the trustees could change such investments and securities "when and as they and my executors may think necessary or expedient.” The special guardian urged that paragraph thirteenth of that will limited the trustee to: (a) investments made by the deceased and continued by the trustee; and (b) investments in the stocks and securities of the specific companies and governmental agencies only which are referred to in that paragraph. After noting the significant changes and the economic structure of the country, Surrogate Delehanty stated that (p 908): "It would be anomalous that a hard and fast limitation should be placed on trustees restricting them solely to investments authorized at the date of creation of the trust.” He stated at page 909: "Search of the text of this will discloses that the language of the testator was permissible in form and not directory.” After considering the last sentence of paragraph thirteenth he held (p 909) "that the trustees had the power to make investments in any securities authorized by statute effective at the date of the investment whether such statutory authorization was extant at the date of the will or not.” It is noteworthy that in Hamersley, Surrogate Delehanty also held that, under the terms of the will, the trustees were under a duty to obtain approval of the executors contemporaneously with any trust investment. Thus, in that case the decedent authorized the trustees to invest according to law applicable at the time of the investment but required that they obtain the consent of his executors, namely, his son and two sons-in-law, prior to any such investment.
In the instant case, in paragraph fifteenth the decedent authorized the trustees to retain any property coming to them from the executors although those investments might be "nonlegals”. He further authorized them to invest in certain enumerated investments which were then considered "legáis”. Lastly, he authorized them "with the written consent of any adult beneficiary for whose benefit any trust funds are held” to invest in "corporate or other Stocks or Securities or other personal property” although they might be considered "nonlegals”.
It is argued by respondent Stillman that this language of the will is mandatory, requiring consent of the adult beneficiaries to all new trust investments which must obviously *752 mean all investments which were not considered "legal” at the time of the execution of the will. The court disagrees. It was obviously the intent of the decedent to permit the trustees in their discretion, in investing the trust principal, to go beyond any "legal list” of trust investments. In order to invest in such "nonlegals”, however, they were required to obtain the consent of the adult beneficiaries. The decedent did not require consent of the beneficiaries for "legal” investments as was required by the decedent in Hamersley. In that case, the decedent intended that the consent of the executors was necessary for all investments, both "legal” and "nonlegal”, with the exception of the investments originally delivered to the trustees. No such over-all consent requirement is present in this will. It is clear that the requirement of consent contained in this will was merely expressive of decedent’s intent to permit investment in "nonlegals” (see Matter of Charming, 129 Misc 393) and to provide some protection to the trustees if they decided in their discretion to invest in such "nonlegals”. The decedent intended to expand the trustees’ powers of investment and not to restrict them. The inclusion of the consent requirement was not intended to provide the beneficiaries with supervisory power over all trust investments as was the situation in Hamersley.
The language authorizing the trustees to invest in "nonlegals” is permissive in nature and it was obviously the intent of the decedent to require consent only if the proposed investment was considered a "nonlegal” one at the time the investment was to be made. Decedent chose his language carefully. At the beginning of the first paragraph of article fifteenth, he empowered his trustees to retain any property delivered to them by the executors "although it may not be of the character of investments now permitted by law to Trustees.” (Emphasis supplied.) He avoided using this exact phrase when at the end of the same paragraph, he authorized the trustees to invest, subject to consent, in certain property "although the same may not be of the character permitted * * * by the ordinary rules of law.” This distinction further indicates an intent by decedent to have such investments and the requirement of consent governed by the law effective at the date of the investment and not restricted by the law as it existed at the date of the will. Inasmuch as there is no longer any requirement of "legal” as opposed to "nonlegal” investments, such consent is no longer necessary.
*753 Respondent Stillman’s argument as to the possible conflict of interest of the two trustees who are income beneficiaries of the trusts under article ninth and who have children who are possible remaindermen is immaterial insofar as the construction of the will is concerned. The court in construing the will is searching for decedent’s intent as expressed in the will and any extraneous facts such as those raised by respondent have no bearing on such a proceeding. Furthermore, the court may not presume at this juncture that these trustees will control the remaining trustees and dictate administration of the trust solely for the benefit of remaindermen as opposed to the interests of the income beneficiary. All of the trustees are under a duty to administer a trust to preserve a fair balance between the income beneficiaries and the remaindermen. (EPTL 11-2.1, subd [a], par [1].) Any violation of such duty will subject the trustees to being surcharged.
The court notes that a conference has been scheduled for February 11, 1975. Following determination of the remaining questions raised by the petition, a decree of accounting may be submitted.