OPINION OF THE COURT
H. Patrick Leis III, J.
By order to show cause, dated March 5, 1999, petitioners Mi *619 chael and Mary Ann Pace commenced this proceeding pursuant to article 81 of the Mental Hygiene Law for the appointment of a guardian of the person and property of their 29-year-old son, John Pace, who sustained a brain injury in a moped accident in 1985. John presently resides in a group home and attends day programs, both of which are funded through the Medicaid program.
The petitioners were appointed as coguardians of the person and property of their son after a hearing held on March 28, 1999. As coguardians, they were authorized to establish a supplemental needs trust with the proceeds of a structured settlement received on behalf of their son pursuant to an infants compromise order (Gowan, J.), dated August 31, 1987. The monies that comprise the structured settlement provide monthly income of $888 with guaranteed annual increases at the rate of 3% for the remainder of John Pace’s life. Further incremental lump sums are payable in the aggregate amount of $280,000.
Decision was reserved with regard to the propriety of appointing the petitioners as trustees of the supplemental needs trust. Counsel for the petitioners and the Suffolk County Attorney’s office were granted leave to file memoranda of law.
The proposed supplemental needs trust provides for the appointment of Michael and Mary Ann Pace as cotrustees and for Carl Pace, John’s brother, as successor trustee. Section 3.0 provides that the trust shall terminate upon the death of John Pace. Any accumulated principal and interest remaining upon John Pace’s death is payable to the New York State Department of Health, or any other appropriate Medicaid entity as reimbursement for medical assistance provided during the lifetime of John Pace (§3.1). All remaining principal and accumulated income shall be paid to the legal representative of the estate of John Pace (§ 3.2).
Since John Pace does not have a will, any funds remaining in the trust, after reimbursement to the State of New York for medical assistance provided, would pass through intestacy to his heirs. Thus, the proposed cotrustees and successor trustee, John Pace’s parents and brother, respectively, are contingent remaindermen of the subject trust (see, EPTL 4-1.1).
The Suffolk County Department of Social Services does not object to the establishment of a supplemental needs trust on behalf of John Pace or to the specific terms of the proposed trust. The Department’s sole objection is to the Paces serving as cotrustees and successor trustee if they stand to inherit the *620 corpus of the trust after the Department of Social Services has been reimbursed for medical assistance provided. Objectant cites DiGennaro v Community Hosp. (204 AD2d 259 [2d Dept 1994]) for the proposition that there would be a serious conflict of interest for a family member to serve as a trustee of a supplemental needs trust if he or she is a potential remainder-man of the trust.
Petitioners contend that the trust in DiGennaro (supra) differs significantly from the proposed trust and that the concerns raised by the Appellate Division have been addressed in the proposed trust. In addition, petitioners argue that since article 81 of the Mental Hygiene Law does not prohibit a family member, who is a potential beneficiary of an incapacitated person’s estate, from serving as a property management guardian, a family member, who may inherit the remainder of a supplemental needs trust, should not automatically be excluded from serving as a trustee. Finally, it is argued that the State’s remainder interest is adequately protected by State regulations which specifically protect such remainder interest.
It is well settled that a trustee of a supplemental needs trust has a statutory obligation to act impartially with respect to all beneficiaries (see, EPTL 11-2.1; Matter of Goldberg Irrevocable Trust, 159 Misc 2d 1107 [Sur Ct, NY County 1994]). EPTL 11-2.1 (a) requires that with regard to receipts and expenditures, a trust shall be administered with due regard to the respective interests of income beneficiaries and remaindermen. Thus, any violation of such fiduciary duty would subject the trustee to a surcharge (see, Matter of Stillman, 81 Misc 2d 747 [1975]).
Moreover, pursuant to the mandate of section 366 (2) of the Social Services Law, regulations have been promulgated to assure the fulfillment of the fiduciary obligations of the trustee with respect to the State’s remainder interest in a supplemental needs trust (see, 18 NYCRR 360-4.5 [b] [5]). Such regulations require a trustee of a supplemental needs trust to notify the appropriate social services district: of the creation or funding of the trust for the benefit of a Medicaid applicant or recipient; of the death of the beneficiary of the trust; in advance of any transactions tending to substantially deplete the principal of the trust; and in advance of any transactions involving transfer from the trust principal for less than fair market value. In addition, the trustee is required to provide the social services district with proof of bonding if the assets of the trust equal or exceed $1,000,000 or if a court of competent jurisdiction has required bonding of a trust with assets of less than $1,000,000.
*621 A social services district may commence a proceeding pursuant to Executive Law § 63 against the trustee of a supplemental needs trust for any acts or omissions of the trustee which are inconsistent with the terms of the trust, contrary to applicable laws or regulations or contrary to the fiduciary obligations of the trustee.
Thus, the foregoing statutory and regulatory scheme protects the State’s remainder interest in a supplemental needs trust from potential violations of a family trustee’s fiduciary duty.
In DiGennaro (supra), the Appellate Division, Second Department, affirmed the trial court’s disapproval of a special needs trust on the grounds that the terms were not in the best interests of the incapacitated infant. The court cited as a “serious conflict of interest” the fact that the infant’s parents were both cotrustees and beneficiaries of the trust principal upon the infant’s death. In addition, the court noted that the proposed trust did not provide for court approval of trustee withdrawals or for annual accountings to the court.
The Appellate Division’s holding in DiGennaro (supra) is not dispositive of the within application. Unlike the instant trust, the trust proposed in DiGennaro was not a supplemental needs trust within the meaning of EPTL 7-1.12. Rather, the DiGennaro trust was a special needs or Medicaid qualifying trust, an irrevocable trust which allowed a disabled individual access only to the trust’s income for life. Upon the death of the beneficiary, the entire principal and accumulated income passed to the remainderman designated in the trust instrument. In keeping with the law in effect at the time, such Medicaid qualifying trust was not subject to a requirement that the State be reimbursed for medical assistance paid. Moreover, the special needs trust proposed in DiGennaro allowed for gifts of principal to third parties and required no bonding of the trustees who were to have control of an approximately $8,000,000 corpus.
Subsequent to the trial court’s decision in DiGennaro (supra), pivotal legislation was enacted. In August of 1993, Federal legislation, entitled the Omnibus Budget Reconciliation Act of 1993 (Pub L 103-66, 107 US Stat 312 [OBRA 1993]), repealed the Medicaid qualifying trust statute and authorized the creation of supplemental needs trusts for the benefit of disabled individuals on condition that upon the death of such individuals, the State would be reimbursed from the remaining trust assets for medical assistance provided (see, 42 USC § 1396a). Thereafter, New York amended Social Services Law § 366 and the recently enacted EPTL 7-1.12 to assure that supplemental *622 needs trusts be established in accordance with the Federally mandated legislation. In addition, the enactment of article 81 of the Mental Hygiene Law authorized the appointment of family members as property management guardians and also provided that guardians could be accorded the power to create revocable or irrevocable trusts for the benefit of their incapacitated wards (see, Mental Hygiene Law § 81.21 [a] [6]).
The aforementioned legislation renders the Appellate Division’s ruling in DiGennaro (supra) inapplicable to the within proceeding. The supplemental needs trust proposed herein differs from the trust in DiGennaro and was drafted in conformity with current law. In accordance with OBRA 1993 and State law, the trust requires that upon John Pace’s death, the appropriate Medicaid entity be reimbursed for medical assistance provided to him. Only if there is remaining principal and accumulated interest will John Pace’s estate inherit. Moreover, the subject trust mandates: that the cotrustees execute and file a bond in an amount to be fixed by the court (§ 4.1); that the cotrustees file an annual report in the form and manner required by section 81.31 of the Mental Hygiene Law (§ 4.4); and that such accounting shall be examined pursuant to section 81.32 of the Mental Hygiene Law by a Court Examiner appointed by the Presiding Justice of the Appellate Division.
A number of cases have interpreted DiGennaro (supra) as prohibiting family members, who are potential remaindermen, from serving as trustees of supplemental needs trusts. (See, Matter of Kacer, NYLJ, Nov. 1, 1994, at 33, col 1; Matter of DeVita, NYLJ, May 22, 1995, at 32, col 2; Matter of McMullen, 166 Misc 2d 117 [1995]; Merer v Romoff, 172 Misc 2d 807 [1997].) However, the cases do not address the fact that the DiGennaro trust was a Medicaid qualifying trust and not a supplemental needs trust drafted in accordance with current law.
This court adopts the reasoning of the Supreme Court in Matter of Morales which held that since a family member, who is a potential beneficiary of the estate of an incapacitated person, is not prohibited from serving as a property management guardian, then family members, who are potential remaindermen of supplemental needs trusts should not be excluded from serving as trustees (see, NYLJ, July 28, 1995, at 25, col 1).
Mental Hygiene Law § 81.19 (a) provides for the appointment of a spouse, adult child, parent or sibling of an incapaci- *623 toted person as property management guardian. Such provision does not prohibit a family member who may inherit from the incapacitated person from serving as a property management guardian. Indeed, “[i]t has long been the law in this State, under both article 81 of the Mental Hygiene Law and its precursors, that ‘strangers will not be appointed [guardian] of the person or property of the incompetent, unless it is impossible to find within the family circle, or their nominees, one who is qualified to serve’ ” (Matter of Chase, 264 AD2d 330, 331, quoting Matter of Dietz, 247 App Div 366, 367; see also, Matter of Klein, 145 AD2d 145, lv denied 73 NY2d 705; Matter of Weisman, 112 AD2d 871).
Very often, family members who may potentially inherit from the incapacitated person are appointed as their property management guardians and accorded the discretion, subject to judicial oversight, to invest and spend the incapacitated person’s funds as they deem appropriate. Since the role of guardian is analogous to the role of a trustee of a supplemental needs trust, there is no logical reason to prohibit parents and relatives of a disabled person from serving as trustees merely because they are contingent remaindermen of a supplemental needs trust. Here, the proposed cotrustees would be subject to the same court oversight as property management guardians who may inherit from their wards, including posting of a bond and filing of annual accounts which will be reviewed by a Court Examiner.
To interpret DiGennaro (supra) as creating a blanket rule prohibiting all parents or relatives who are remaindermen from serving as trustees of supplemental needs trusts would deprive many disabled beneficiaries of the appointment of the best possible trustee and violate the strong public policy established in this State for appointing family members rather than strangers to administer the funds of those who are not competent to care for their own assets.
In view of the foregoing, it is determined that a family member, who is also a contingent remainderman of a supplemental needs trust, should not automatically be excluded from serving as a trustee of said trust.
Just as there are instances when it would be inappropriate to appoint a family member as property management guardian of an incapacitated person, there are times when it would not be in the best interest of a disabled person for a family member to be appointed as trustee of his or her supplemental needs *624 trust. The decision as to whether to appoint an independent trustee over a family member can only be made after the court has inquired into the relative fitness of the proposed family member to act as a fiduciary. Items such as the proposed trustee’s history of caring and sacrificing for the disabled person; proven financial and fiduciary skills; and attitudes concerning the appropriate use and expenditure of the disabled person’s funds will bear on the family member’s qualifications to serve as a fiduciary. In addition, the proposed trustee’s personal financial stability and credit history, including any existing judgments and bankruptcies, would be a relevant area of inquiry.
The foregoing inquiry, when coupled with statutory and regulatory safeguards imposed on trustees including: posting of bonds; submission of annual accountings; review of such ac-countings by a Court Examiner; and notification requirements to the local social services district, assures that the implementation of the terms of a supplemental needs trust will be in the best interest of the disabled person, that the State’s remainder interest will be protected and that a conflict of interest which could prejudice the beneficiaries of the trust will not occur.